MR. JUSTICE SHEA
concurring:
I concur with the opinion herein, but I feel the general matter of credit life insurance, as it was explained to this Court during oral argument, should be put in perspective from the standpoint of the consumer. It is clear the present statutes and practices of the banks and credit life insurance'companies have anything but the interests of the consuming public in mind.
It appears that section 40-4214 (1959), R.C.M. 1947, of Montana’s insurance codes authorized credit life insurance “as additional security for any indebtedness.” The statute provides in full:
“Existing insurance — choice of insurer. When credit life insurance or credit disability insurance is required as additional security for any indebtedness, the debtor shall, upon request to the creditor, have the option of furnishing the required amount of insurance through existing policies of insurance owned or controlled *56 by him or of procuring and furnishing the required coverage through any insurer authorized to transact an insurance business within this state.” (Emphasis added.)
By this statute the borrower is allowed the option of further securing the bank by naming the bank as a beneficiary on existing life insurance policies on the borrower’s life, or of going to an insurance company of the borrower’s choice to procure the required insurance. Unfortunately, no duty is placed upon the bank to inform the borrower of these rights. It is highly unlikely that the average borrower would know of the existence of this statute so that he could make his wishes known to the bank. It is equally obvious that the banks are not going to take it upon themselves to inform the borrower of the existence of this statute and of his rights under the statute. Accordingly, the statute is — from the standpoint of effectively conferring rights upon the consuming public— meaningless.
I believe that because of the weakness of this statute, the situation developed in this case. From the life insurance company’s standpoint, credit life insurance was a highly lucrative business. It was in its interest to corner the market, more or less to have an exclusive franchise from the banks to provide the credit life insurance required by the bank of its borrowers. Accordingly, the insurance company spent large sums of money wining and dining appropriate bank personnel to become the exclusive agent selling credit life insurance. If the insurance company won the bank’s favor, they had in effect a monopoly on the credit life insurance policies of the bank. The essence of the insurance company’s claim here is that it is fighting to retain exclusive control of its territory.
There is also an inherent danger that the bank choosing the life insurance company will, in exchange for this business, be getting favors from the insurance company. They could, of course, take any form. At the lest, the lavishing of large sums of money wining and dining the appropriate bank personnel involved, can only have the effect of increasing the ultimate cost to the consumer. Moreover, there is another angle that the bank, through its board *57 of directors or officers, could form an insurance company or acquire an interest in an insurance company handling credit life insurance for the bank. In this fashion, the insurance company would have a built-in clientele, and the bank officers, etcs, would have a built-in source of additional income — that produced from also having an interest in the insurance company. It should be noted that this kind of cozy relationship is specifically prohibited to banks chartered under the National Banking Act. In such situations banks may not engage in the insurance business or act as agents. 12 U.S.C. Section 92.
It is unfortunate that the burden is placed on the borrower in a situation where he is obviously in no position to either know the law or to bargain with the banks and insurance companies who have already decided how the spoils are to be divided.